# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| CARE.COM, INC., SHEILA LIRIO MARCELO, GEORGE BELL, MARLA BLOW, CLARK K. ERVIN, WILLIAM H. HARRIS, CHET KAPOOR, DUNCAN ROBERTSON, DAN YOO, IAC/INTERACTIVCORP, and BUZZ MERGER SUB INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on December 20, 2019 (the "Proposed Transaction"), pursuant to which Care.com, Inc. ("Care.com" or the "Company") will be acquired by IAC/InterActivCorp ("Parent") and Buzz Merger Sub Inc. ("Merger Sub," and together with Parent, "IAC").

2. On December 20, 2019, Care.com's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with IAC. Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of Care.com's outstanding common stock for

$15.00 per share in cash.  The Tender Offer is set to expire on February 10, 2020.

3. On January 13, 2020, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Care.com common stock.

9. Defendant Care.com is a Delaware corporation and maintains its principal executive offices at 77 Fourth Avenue, Fifth Floor, Waltham, Massachusetts 02451.  Care.com's

common stock is traded on the New York Stock Exchange under the ticker symbol "CRCM."

10. Defendant Sheila Lirio Marcelo is Chief Executive Officer, Founder, and Chairwoman of the Board of the Company.

11. Defendant George Bell is a director of the Company.

12. Defendant Marla Blow is a director of the Company.

13. Defendant Clark K. Ervin is a director of the Company.

14. Defendant William H. Harris is a director of the Company.

15. Defendant Chet Kapoor is a director of the Company.

16. Defendant Duncan Robertson is a director of the Company.

17. Defendant Dan Yoo is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Care.com (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of December 18, 2019, there were approximately 33,268,479 shares of Care.com common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout

the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28.     Care.com is the world's largest online destination for finding and managing family care, with 19.8 million families and 14.3 million caregivers across more than twenty countries, including the United States, U.K., Canada, and parts of Western Europe, and approximately 1.7 million employees of corporate clients having access to the Company's services.

29. On December 20, 2019, Care.com's Board caused the Company to enter into the Merger Agreement with IAC.

30. Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Care.com's outstanding common stock for $15.00 per share in cash.

31. According to the press release announcing the Proposed Transaction:

IAC (NASDAQ: IAC) and Care.com (NYSE: CRCM), the world's largest online marketplace for finding and managing family care, announced today that the two companies have entered into a definitive agreement pursuant to which IAC will acquire Care.com for $15.00 per share in an all-cash transaction representing approximately $500 million of enterprise value. This valuation represents a 34% premium to Care.com's unaffected closing stock price on October 25, 2019, the last trading day before a media report was published speculating about a potential sale process. . . .

Transaction Details

Under the terms of the merger agreement, IAC, through its directly owned acquisition subsidiary, will commence a tender offer to acquire all outstanding shares of Care.com. Pursuant to the tender offer, stockholders of Care.com will be able to tender their shares of Care.com common stock in exchange for $15.00 per share in cash. In addition, the holder of Care.com series A convertible preferred stock will be able to tender its shares in exchange for a cash payment equal to 150% of its liquidation preference, plus accrued and unpaid dividends. Certain of the Company's largest stockholders, including Ms. Marcelo, representing a significant portion of the outstanding shares of the Company have entered into Support Agreements committing them to tender their shares into the tender offer. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the voting power of Care.com's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Upon the successful completion of the tender offer, IAC's acquisition subsidiary will be merged into Care.com, and any remaining shares of Care.com will be canceled and converted into the right to receive the same consideration payable pursuant to the tender offer. Following completion of the merger, the common stock of Care.com will no longer be listed for trading on the New York Stock Exchange. The transaction is expected to close in the first quarter of 2020.

32. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 5.3(a) of the Merger Agreement provides:

> Except as expressly permitted by this Section 5.3, from and after the date hereof, the Company shall, and shall cause its Subsidiaries and Representatives to, (x) promptly cease and cause to be terminated any discussions or negotiations with any Third Party that may be ongoing with respect to any Acquisition Proposal or any proposal, inquiry or offer that would reasonably be expected to lead to an Acquisition Proposal, and (y) request any such Third Party to promptly return or destroy all confidential information concerning the Company and its Subsidiaries. Except as expressly permitted by this Section 5.3, from and after the date hereof until the Acceptance Time, or, if earlier, the termination of this Agreement in accordance with Article 7, the Company shall not, and shall cause its Subsidiaries not to, and shall instruct its Representatives not to on behalf of the Company, (A) initiate, solicit, knowingly facilitate or intentionally encourage the making of any offer or submission that constitutes or would reasonably be expected to lead to an Acquisition Proposal; (B) engage in or knowingly facilitate any discussions or negotiations with respect thereto (other than informing any Third Party of the existence of the provisions contained in this Section 5.3), except that, the Company may ascertain facts from any Person making an Acquisition Proposal for the purpose of the Company Board informing itself about such Acquisition Proposal and the Third Party making it; (C) make available any non-public information regarding the Company or its Subsidiaries to any Person (other than Parent, and Merger Sub and their respective Representatives acting in their capacities as such) in connection with or in response to an Acquisition Proposal or any proposal, inquiry or offer that would reasonably be expected to lead to an Acquisition Proposal; (D) enter into any letter of intent or agreement in principle or any Contract concerning any Acquisition Proposal or any proposal, inquiry or offer that would reasonably be expected to lead to an Acquisition Proposal (other than an Acceptable Confidentiality Agreement in accordance with Section 5.3(b)); or (E) reimburse or agree to reimburse the expenses of any other Person (other than the Company's Representatives) in connection with an Acquisition Proposal or any inquiry, discussion, offer or request that would reasonably be expected to lead to an Acquisition Proposal. Except as expressly permitted by this Section 5.3, from and after the date hereof until the Acceptance Time, or, if earlier, the termination of this Agreement in accordance with Article 7, neither the Company Board nor any committee thereof shall (i) approve or recommend, or publicly propose to approve or recommend, any Acquisition Proposal, (ii) withdraw, change or qualify, in a manner adverse to Parent or Merger Sub, the Company Board Recommendation, (iii) approve or cause the Company to enter into any merger agreement, acquisition agreement, memorandum of understanding, agreement in principle, investment agreement, letter of intent or other similar agreement relating to any Acquisition Proposal (in each case, an "Alternative Acquisition Agreement"), (iv) fail to include the Company Board Recommendation in the Proxy Statement or (v) resolve or agree to do any of the foregoing (any action set

forth in the foregoing clauses (i), (ii), (iv) or (v) of this sentence (to the extent related to the foregoing clauses (i) or (ii) of this sentence), a "Change of Board Recommendation").

33. Additionally, the Company must promptly advise IAC of any proposals or inquiries received from other parties. Section 5.3(c) of the Merger Agreement states:

> From and after the date hereof, the Company shall promptly (and in any event within twenty four (24) hours) notify Parent in the event that the Company receives any Acquisition Proposal. The Company shall notify Parent promptly (and in any event within twenty four (24) hours) of the identity of such Person and provide to Parent a copy of such Acquisition Proposal (or, where no such copy is available, a reasonable description of such Acquisition Proposal). Without limiting the foregoing, the Company shall promptly (and in any event within twenty four (24) hours after such determination) advise Parent if the Company determines to begin providing information or to engage in discussions or negotiations concerning an Acquisition Proposal pursuant to Section 5.3(b).

34. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants IAC a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.3(d) of the Merger Agreement provides:

> Notwithstanding anything to the contrary contained in Section 5.3(a), if the Company has received a bona fide written Acquisition Proposal that the Company Board (or any duly authorized committee thereof) determines in good faith, after consultation with its financial advisors and outside legal counsel, constitutes a Superior Proposal, the Company Board may at any time prior to the Acceptance Time, (i) effect a Change of Board Recommendation with respect to such Superior Proposal and/or (ii) terminate this Agreement pursuant to Section 7.1(f), in either case subject to the requirements of this Section 5.3(d). The Company shall not be entitled to effect a Change of Board Recommendation pursuant to this Section 5.3(d) or terminate this Agreement pursuant to Section 7.1(f) unless the Company shall have provided to Parent at least three (3) Business Days' prior written notice (the "Notice Period") of the Company's intention to take such action, which notice shall specify the material terms and conditions of such Acquisition Proposal, and shall have provided to Parent a copy of the available proposed transaction agreement to be entered into in respect of such Acquisition Proposal, and:
>
> (i) during the Notice Period, if requested by Parent, the Company shall have, and shall have caused its legal and financial advisors to have, engaged in good faith negotiations with Parent regarding any amendment to this Agreement proposed in

writing by Parent and intended to cause the relevant Acquisition Proposal to no longer constitute a Superior Proposal; and

(ii) the Company Board shall have considered in good faith any adjustments and/or proposed amendments to this Agreement (including a change to the price terms hereof) and the other agreements contemplated hereby that may be irrevocably offered in writing by Parent (the "Proposed Changed Terms") no later than 11:59 a.m., New York City time, on the last day of the Notice Period and shall have determined in good faith that the Superior Proposal would continue to constitute a Superior Proposal if such Proposed Changed Terms were to be given effect.

In the event of any material revisions to such Superior Proposal offered in writing by the party making such Superior Proposal, the Company shall be required to deliver a new written notice to Parent and to again comply with the requirements of this Section 5.3(d) with respect to such new written notice, except that the Notice Period shall be two (2) Business Days with respect to any such revised Superior Proposal.

35. The Merger Agreement also provides for a "termination fee" of $20 million payable by the Company to IAC if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

36. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

37. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

38. First, the Solicitation Statement omits material information regarding the Company's financial projections.

39. The Solicitation Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA and (b) Adjusted EBIT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

40. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41. Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

42. With respect to Morgan Stanley's Discounted Equity Value Analysis, the Solicitation Statement fails to disclose: (i) Morgan Stanley's basis for applying an Adjusted EBITDA multiple range of 11.0x to 13.0x; (ii) projected cash and cash equivalents; and (iii) the individual inputs and assumptions underlying the discount rate of 11.5%.

43. With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the terminal values for the Company; (ii) outstanding debt and debt-like items; and (iii) the individual inputs and assumptions underlying the range of discount rates of 10.5% to 12.5% and the perpetual growth rate ranging from 2.0% to 4.0%.

44. With respect to Morgan Stanley's Illustrative Leveraged Buyout Analysis, the Solicitation Statement fails to disclose Morgan Stanley's basis for selecting the leverage multiple, financing terms, exit multiple, and target internal rate of return used in the analysis.

45. With respect to Morgan Stanley's Equity Research Analysts' Price Target Analysis, the Solicitation Statement fails to disclose: (i) the price targets observed by Morgan Stanley in the analysis; and (ii) the sources thereof.

46. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.

47. The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

51. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

52. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

53. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

54. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

55. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

56. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

57. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

58. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

59. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

62. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are

made, not materially misleading."

63. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

64. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

65. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

66. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and IAC)

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants and IAC acted as controlling persons of Care.com within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Care.com and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

69. Each of the Individual Defendants and IAC was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

71. IAC also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

72. By virtue of the foregoing, the Individual Defendants and IAC violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants and IAC had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

74. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

75. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.      Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2020

**RIGRODSKY & LONG, P.A.**

By: /s/ *Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com